Case number 11-37-4, Lawrence Anderson v. Timothy Brunsman. All arguments not to exceed 15 minutes per side. Ms. Steffels for the appellant. Good afternoon, your honors. I wish to reserve... Hang on, hang on one second. Let's let your adversary get seated. Okay, now you may begin. All right, I wish to reserve five minutes for rebuttal. May it please the court, my name is Katie Steffels here on behalf of the petitioner appellant, Lawrence Anderson. Mr. Anderson's petition for writ of habeas corpus raises gross inadequacies of his trial counsel. However, as laid out in my brief submitted to this court, before this panel can even begin to consider the claim of ineffective assistance of counsel that Mr. Anderson raises, the court must first determine whether or not the statute of limitations as laid out in the AEDPA has been fulfilled or not. In our brief, we raise several issues as to why Mr. Anderson's petition should be deemed timely. The first argument that I will begin with is the argument that Mr. Anderson's petition was timely filed under 2244 D1A, which states that this one-year statute of limitations doesn't actually begin to run until the lower court decision is final. In this case, the facts will demonstrate that Mr. Anderson was convicted and sentenced by the trial court. He then timely filed an appeal of his conviction and sentence with the Ohio Court of Appeals. An opinion affirming his conviction and sentence was issued in November 2008. However, his appellate counsel failed to notify him of the Court of Appeals' decision. He did not learn of that until he on his own discovered the opinion and finally received a time-stamped copy in April of 2009. The copy being time-stamped, by that, do you mean date-stamped, so he knew when it was issued, or what's the relevance? Everybody keeps saying time-stamped. Yes, Your Honor, I really don't know what he means by that. I know that's what he points out, that he received a time-stamped copy. I'm not sure if any copy in general is dated in some way. Presumably, yes, Your Honor. But he raises, I think it's April 28th of 2009 is the date that he actually received the opinion. Going off of that, he filed a Notice of Delayed Appeal with the Ohio Supreme Court, which was ultimately denied. Mr. Anderson, once he learned of the Court of Appeals' decision in April 2008, acted diligently in proceeding with his appeal. What about how diligently that he acted after a later point? Yes, Your Honor. You say he acted diligently, which, it still took him 45 days, but I could see, you could argue that's diligent. Yes, there's a few things. But then this second proceeding terminates, correct? Correct, yes. The Ohio Supreme Court came out, I believe, in July, end of July. July 29th. Correct, July of 2009, saying, we're denying your application for a delayed appeal. At that time, he knows about the previous delay, which was unfortunate, improper, whatever it was, but nonetheless waits over half a year before filing, right? That's correct, he does. Why isn't that not diligent? That's my question. Yes, and the argument that we have in that is that, first of all, under D1A, they were arguing that the motion for a delayed appeal here is part of his direct review. I know that there's cases. I mean, we have case law that's against that, correct? Right, and in my brief, I distinguish some of the case law that is cited, but I also wanted to point out to the Court during the argument that, first of all, largely the Searcy opinion is relied upon by the appellee in saying that this is not part of direct review. This is collateral review, so therefore he's not entitled to the 90-day tolling period. That case is distinguishable. In Searcy, what had happened, the Court of Appeals had affirmed the defendant's conviction in that case. He then goes on, instead of filing an appeal of that decision with the Supreme Court of the state, goes on to file other collateral relief attacks, various things, goes through that process, doesn't get anywhere. Three years later, he then decides to file a motion for delayed appeal with the Supreme Court for the state in that case. That is different here because, first of all, Mr. Anderson proceeded immediately after learning of the Court of Appeals decision to file a motion for delayed appeal after he learned of that. He didn't file for any other collateral relief in between there to see where that would get him and then decided to go back later. The question is, is that Ohio Supreme Court filing part of direct appeal, why does it matter what you were doing in the interim? I mean, your argument, your legal argument would be the same if he had waited three years before moving for direct appeal. I think there is a distinction to make, and the reason why I say that is, in the appellee's response brief, they cite to the Keeling case. That case discusses a 2011 U.S. Supreme Court case called Jimenez v. Quarterman, which is very similar to the case in this. In the Jimenez decision, the United States Supreme Court said that the defendant's motion in that case, which was a motion to file a late appeal because he didn't actually learn of the decision until a later date after he could have filed for a timely appeal of the Court of Appeals decision. In that case, they said that was part of direct review, and the distinction that they made was that there was no other relief taken by the defendant in that case in the interim. Last question. I take it you're arguing that Searcy is sort of a, we have to look at the facts, and sometimes a delayed appeal is part of the direct appeal, and sometimes a delayed appeal is collateral. That's precisely what I'm arguing. All right, but that's kind of a, some of us may hesitate to adopt that position. Absolutely. Because what that does is that sort of opens up every delayed appeal into which type was it. It's more likely that we might end up saying it's one or the other, and if we say it's one or the other, it's probably going to be collateral. Here's my question. Assume that that's what we think. Absolutely. We'll examine your arguments. Assume that's what you think. Yes. I mean, assume that's what we think, which is that that's, for purposes of this case, collateral, even though we understand your argument that it's not. Yes. Then my question still is, how do you get around how diligent he was when he waited nine months, eight or nine months? Yes, there's several. From December 20, wait a minute. July 29th through April 23rd. July 29th through, I think, June of 2010, June 2nd, 2010. That time, yeah. July 29th. I'm sorry, you said June? I see a document here that says April 23rd of 2010. That's from the. Perhaps that's what it was. That's from the magistrate's report and recommendation. Okay. So it's from July 29th to April 23rd, which is pretty close to nine months. Yes. That's my question. Okay. Yes. Why was that diligent? For several reasons. The first is that because he reasonably believed that this was part of, that his direct appeal, the motion for delayed appeal was part of his direct review, and that he, therefore, was timely filing his petition, not even nine months later, within the one-year statute of limitations, because the statute of limitations, he thought, didn't run until the 90 days expired for filing petition for writ of cert with the U.S. Supreme Court. Secondly. Well, he thought he got the 90 days to the Supreme Court after the. Yes, because he, if this was considered, if the motion for delayed appeal was considered part of his direct review, he would have been entitled to the 90-day period during which he could have sought petition for a writ of cert in front of the U.S. Supreme Court, even if he didn't, before the one-year even started. The second is that under 2244D1D, his argument is that he didn't, even if you find that it was a collateral relief, the motion for delayed appeal. That's correct. That he thought that he was still timely filing this, because he didn't actually learn of the Court of Appeals decision until he got it in 2009. But I'm asking about the 191 days. That didn't have anything to do with that previous delay. And he, well, him acting in reliance that he was well within the one-year statute of limitations explains that delay. There's a difference between diligence and making your own interpretation of the statute and waiting until the end, because, am I right, the Ohio Supreme Court denied his petition on July 29th? Correct. Okay. At that point, he had a minimum of three and a half months and probably five months to come within any interpretation of the one-year limit, right? Correct, Your Honor. And he let all of that go. He did. And he was, according to his affidavit, he was trying to get access to the law library, trying to get access to somebody that was assisting him in filing his appeal, for all of those equitable reasons. Do you have any cases that say that that count? I mean, the general proposition we have here is the person, in a technical, physical sense, had the ability to file within the one-year limit, and he didn't do it. Yes. And the reason that he didn't do it was he thought he had more time. Yes. Is that fair reading? That's correct. Do you have any cases that say that that's good enough to be the kind of due diligence that you need for equitable tolling? Because it's not just kind of ordinary due diligence. It's part of something that is sufficiently important. Yes, Your Honor. Do you have any cases that you can point to? I do not. The only thing that I would point out is the deference that's given to somebody that's and would ask the court to give him deference in that. You have five minutes for rebuttal. Yes. Thank you. May it please the Court, my name is Mary Ann Reese. I'm an assistant attorney general, and I represent the warden on this action. We think this is a fairly straightforward statute of limitations case here, and we would ask the court to affirm the district court's determination dismissing the case. In response to some of the discussion that's just continued, the law is well established that Mr. Anderson was not entitled to an additional 90 days, that his denied, delayed appeal was, in fact, part of a collateral proceeding. We have not just the one case referred to, but numerous other ones compiled in our brief that have followed that. So that's the law in this circuit. And I cannot remember anywhere in the record where it says that Mr. Anderson was nine months late is because he thought he had an extra 90 days. We don't believe that's in the record. Furthermore, there is case law saying just the fact that you were wrong about the law does not equate to equitable tolling, and we'd be happy to brief that. I am not going to go into the details of all these dates, except to note that Mr. Anderson claims to have received his appellate court disposition in the mail on April 28, 2009. We don't know from what he filed in state court when he actually knew of that decision or what caused him to receive it. I believe he said he got it from the court. And even then, he didn't file his motion for delayed appeal with the Ohio Supreme Court within 45 days, as you're required to do. So considering the Smith case, he should have filed within 45 days and didn't do it. Let me ask you one other thing about the dates, because this 90 days to the Supreme Court, I wasn't sure that it made any difference. By my count, and help me with this, if the time starts running from, no, okay, I'll strike that. I think I may now understand. If he gets the 45 days that he didn't use to go to the Ohio Supreme Court, and if he gets the 90 days that he didn't use to go to the U.S. Supreme Court, and if he gets the tolling while it's before the Supreme Court, then he might come in just under the one year. Is that right? I believe that's correct, Your Honor. He needs each of those ifs. He was slightly less than three months outside the statute of limitations when he filed his habeas petition. So had he had an extra 90 days? Okay, because that's if you count both the 45 days that he didn't use and the 90 days. That's correct. I thought if it's not collateral but direct, isn't that the assumption? Then it doesn't count at all. Then that doesn't count at all, and then he's clearly timely. Is that right? Well, no, the question starts that the time before the Ohio Supreme Court is tolled, because if it's not direct, then it's post-conviction. And if you file post-conviction, then it would be tolled. Right? Post-conviction, which is then denied, is tolled for the time that it is tolled. It's tolled but not restarted. That's the problem. Correct. If you treat it as not collateral but rather direct, then it's direct all the way up, right? I mean, if you accept the theory, which I'm asking the opposing counsel to assume that we would reject it, but if, on the contrary, you accept it, then the interstitial times as part of the direct appeal don't count, right? Yeah, that's correct. But the law is well established that we don't accept it. I understand. But I mean, we're talking about what he may have misunderstood. Right. Your Honors, in addition, he makes the argument that he's entitled to equitable tolling. We would dispute that on a number of bases. Equitable tolling is a rare relief. He has to show that he was diligent and that some external circumstance stood in his way. His state court filings are minimal on that. There's a motion for delayed appeal, and all it has is one rather self-serving affidavit saying, this is the date I received the time stamp copy of the court appeals decision. It doesn't say when he heard about it. It doesn't say what he did to monitor his case, as he has a duty to do. And in the district court, in the petition, he never even mentioned that counsel had not sent him his court of appeals decision. He has made no claim of ineffective assistance of appellate counsel, so he can't rely on that as a basis for equitable tolling here. And there's a clear question as to diligence. He received his state court of appeals denial. I'm sorry, the Ohio Supreme Court denied his delayed appeal, and then he still waited nine months to file for habeas. Because from a timeliness point of view, he could have filed that same minimal-type document that he filed with the Ohio Supreme Court, and it would have then put him into court timely, right? I mean, it's not that the federal has some higher standard of how much you need just to call it timely. You just have to file a piece of paper, right? You file your federal habeas petition, which basically answers a whole bunch of questions. And yes, Your Honor, and then he ultimately did that. So I'm not sure it required the law library and all these things that he says were reasons for his not filing it. And by the way, that's, again, not a basis for equitable tolling here. And finally, he has raised the issue in his brief of actual innocence. And in order to receive relief on that basis, he would have to show new, reliable evidence. And he has not shown that. He brought forth a letter written, purported to be written by the victim. That letter came out at trial. It was known at time of trial, so it's not new. Killer question how reliable it is. And in addition, the facts here, there's a lot of uncontroverted evidence of a brutal attack. And it can't be said that no reasonable juror would have found him guilty. He fails on the actual innocence. There's a statement within one of the brief papers saying the DNA didn't match the petitioner. Do you have any idea what that's supported by or what that's adverting to? Your Honor, if you go back to the trial transcript, which we filed in the district court after the Certificate of Appealability was granted, it was not. Trial transcript wasn't originally filed because this went out on a motion to dismiss statute of limitations. But with regard to the DNA, there was a Bureau of Criminal Investigation serology expert who testified, who said that he examined the rape test, which was taken from, I believe, underwear and certainly anal and vaginal areas of the victim, that there was semen found there, but it was such a small sample you could not include or exclude Mr. Anderson based on that. So it was a not able to match, not didn't match, but that's in the trial transcript. That's exactly true. Yes, Your Honor. And furthermore, Mr. Anderson's statement to police initially was he had no sex with the victim and then later on his statement was that he did have sex and it was consensual, even though she's there with a broken arm and having had her head bashed in and threatened to have her children and herself killed. I have no further argument. If the court has any questions, otherwise we'd submit on briefs. All right. Thank you, counsel. Thank you. I have five minutes for rebuttal. Sure. Just a few points going off of what was argued and also some of your questions to opposing counsel here. First of all, as opposing counsel points out, Mr. Anderson's petition for a writ of habeas corpus was filed just outside of the three-month period for being timely. And as Your Honors had asked- Was it a three-month period? Well, one year, but he was late by almost three months. So our argument, of course, is that- So it was a year plus three months plus a little. Right. And so if his motion for a delayed appeal is considered part of direct review, which of course is up to Your Honors to decide, then he would be entitled- the statute of limitations wouldn't begin to run until the end of the period for which he could have sought a petition for- But if it's part of direct appeal, you don't even need that, right? Because under your argument, finality at a minimum wouldn't have occurred until the Ohio Supreme Court finished. Forget the 90 days. You'd still be in time, right? That's correct. Yes. So the whole 90 days is kind of a red herring, isn't it? Well, yes and no. From a legal point of view, at worst, it's relevant to his mistaken view of the law. Well, it's not really a red herring because the cases point out that direct review stops after the time in which you could seek a petition for certiorari with the United States Supreme Court. But you don't need those 90 days if the Ohio Supreme Court is part of direct review because the Ohio Supreme Court didn't finish until July. Right, so presumably- He filed in April within a year. Right, so presumably he would have still been on time had that been considered part of the direct review. You are correct. But the law, of course, just to clarify, is that even if the Ohio Supreme Court would have come back and said, no, we still affirm your conviction, he still would have been allowed to file a petition for a writ of cert with the United States Supreme Court or not do so. He still would have gotten that time frame before under D1A, the statute of limitations would have even begun running and therefore clearly would have been timely. But not only that, we point out that he also, even if that's not found under D1D, because of not learning of his direct appeal or of the denial of his direct appeal with the Ohio Supreme Court of Appeals, that he still should be allowed to- that this petition was timely filed. A few other things. In regards to the question about the DNA evidence, there are citations in my brief and I'm sure there are as well in Apali's brief as to where exactly in the trial transcript that is laid out. But the summary is correct that there was testimony that the DNA evidence could not include or exclude him. And again, I would argue, of course, that you take a close look at the differences between the cases that are cited that say that the motion for delayed appeal is part of collateral review and also read closely the case of Lambert, which is cited in my brief, and also the Jimenez opinion, which is a U.S. Supreme Court opinion that came out in 2011. And I can give you the site of that case. It is 555 U.S. 113- I'm sorry, it came out in 2009. It's a 2009 opinion. But again, I think that makes a clear precedent for this panel to go off of in concluding that it is part of his direct review. And therefore, Your Honors, we would argue that his petition is timely and that, at the very least, it should be remanded back to the district court for further finding. Thank you. Thank you, Counsel. That case will be submitted.